UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARIE PEREZ de LEON-GARRITT,

                    Plaintiff,

          v.                                              **DECISION AND ORDER**
                                                          14-CV-456S

STATE UNIVERSITY OF NEW YORK AT BUFFALO,
STATE OF NEW YORK, DAVID F. BURGANOWSKI,
Director, Rehabilitation Counseling Program,
TIMOTHY P. JANIKOWSKI, Associate Professor
and Department Chair, SANDRO M. SODANO,
Assistant Professor, and WENDY GUYKER,
Associate Professor,

                    Defendants.

## INTRODUCTION

          Plaintiff commenced this lawsuit by filing a Summons and Complaint in the State of

New York, Supreme Court, County of Erie, in which she alleges that Defendants violated

her rights under the Constitution of the United States; Title VI of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000 et seq.; and the New York Human Rights Law,

N.Y. Exec. Law §§ 290 et seq. Defendants removed the action to this Court on June 13,

2014, and have moved to dismiss the Complaint, under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, for failure to state a claim. (Docket No. 6.) The motion is fully

briefed[1] and the Court has determined oral argument is unnecessary. For the reasons

discussed below, the motion is granted in part and denied in part.

---

1 Plaintiff filed a memorandum in opposition to the motion. (Docket No. 10.) Defendants requested, and were afforded, the opportunity to submit a reply memorandum, but did not do so on or before the due date of August 14, 2014. The motion was deemed submitted on that date.

**BACKGROUND**

The allegations of fact are as follows. Plaintiff was born in the nation of Mexico, and Spanish is her native language. She has acquired fluency in English and has excellent speaking and writing skills. At the time of the events that form the basis for her claims, Plaintiff was 50 years old.

Plaintiff was accepted into Defendant State University of New York at Buffalo's ("SUNY Buffalo's") Rehabilitation Counseling Masters Degree Program commencing with the Fall, 2011 semester. She received a scholarship grant for that academic year. Under the terms of the grant, she would become liable to repay all amounts received if she was dismissed or voluntarily left her program of study. Plaintiff fulfilled all of her first semester academic requirements and received high grades. She then enrolled for a full-time course load for the second semester—i.e. Spring, 2012. The events giving rise to her claims occurred during that time period.

One of the courses for which Plaintiff registered was a required course, CSEP 658, entitled "Introduction to Group Work." This course had two components—a class and a "lab." The lab consisted of six group counseling sessions in which small training groups of students participated. Plaintiff's lab group was comprised of approximately eight students, including herself. The lab sessions were led by a Ph.D. student, Brandy Crawford, who was supervised by Defendant Guyker.

In the Spring 2012 semester, Plaintiff was 50 years old and was employed full-time as a Rehabilitation Specialist. All other members of her lab group, including the group leader, were in their early 20s to early 30s. All but one were non-Hispanic Caucasians,

and all appeared to be native English speakers. The two-component CSEP 658 course was overseen by Defendant Sodano.

The first lab session proceeded without incident. During the second session, participants were asked to identify one or more of their social skills that needed improvement. Plaintiff, who conducted group counseling sessions in her employment, was of the view that the issues her fellow students identified were "banal and trivial." (Docket No. 1 at 42.) When asked to disclose what she was thinking, Plaintiff expressed her opinion about the other participants' statements and questioned the worth of the lab sessions beyond satisfying a course requirement. She then apologized and several in the group thanked her for her honesty.

In the third session, held on February 29, 2012, the group leader asked: "What would you do if you knew that you would die when you turned 40 years old?" (Id. ¶ 44.) When Plaintiff was called upon to answer the question, which she believed was unfair and isolating due to her age, she explained "the impossibility of formulating a response to having died 10 years in the past." (Id. ¶ 46.) She then proceeded to comment on answers given by other participants, and one fellow student indicated she was offended because Plaintiff was lecturing.

During the following classroom lecture, Plaintiff posed a hypothetical question to her instructor, asking "what a group should do if it . . . was not processing and progressing toward an identified goal." (Id. ¶ 54.) At the fourth lab session, on March 7, 2012, a student opined that Plaintiff's hypothetical question during the previous week's classroom instruction had breached the confidentiality of the lab session. This issue became the

focal point of the group meeting, with a majority of group members agreeing that Plaintiff had committed an ethical breach. After group members began yelling at Plaintiff, she explained that her hypothetical question had not revealed private and personal information about any group participant. Ultimately, Plaintiff apologized.

Additional issues arose during the same lab session over Plaintiff's use of the word "judging." Plaintiff attributes any confusion about her meaning to the fact that English is her second language and the fact that the word "judging," when translated to Spanish, does not mean "judgmental," but has a much more positive connotation. All group members, save one, became angry and hostile toward Plaintiff for stating that she was "judging" them, but the group leader did not intervene.

Plaintiff became so distressed that she could not go to work on the following two days and contacted her psychiatrist for an early appointment. She also sought advice from two professors, one of which, Burganowski, is a named Defendant. Plaintiff stated she felt traumatized and was uncertain whether she could continue attending the lab sessions. Her professors advised that she use the upcoming Spring recess to recover.

On March 18, 2012, at the end of Spring recess, Crawford emailed Plaintiff to set up a meeting with Defendant Guyker and herself prior to the next lab session, scheduled for Wednesday March 21, 2012. Plaintiff responded that she was unable to meet in that timeframe due to work and other obligations. She then notified Defendant Sodano by email of her intention to attend the two remaining labs. On March 20, 2012, Dr. Sodano instructed Plaintiff not to attend the next lab session and expressed his concern that she presented "small" or "moderate" potential for harm to the group. (Id. ¶ 81.) When Plaintiff

spoke with Defendant Sodano the following day, he instructed her not to attend that day's lab or class lecture, but to meet with him on March 23, 2012 at 5:00 p.m. He then advised that she must provide a release form from her psychiatrist to confirm that it was safe and proper for her to attend the remaining lab sessions. Alternatively, he mentioned that she could fulfill the lab component of the CSEP 658 course by participating in a course of group therapy sessions outside the academic environment. Participation in such a "closed group" required a referral from a psychiatrist or psychologist, which Plaintiff did not have.

Plaintiff communicated with her psychiatrist on March 21, 2012, and he advised that he had no objection to her returning to the lab sessions. She requested that he discuss her mental health status with Defendant Sodano.

When Plaintiff met with Sodano on March 23, 2012, she offered an executed release permitting her psychiatrist to speak with Sodano about Plaintiff. Sodano declined to accept the release, and informed Plaintiff that he had decided she would not be allowed to attend the next, and final, lab session. Plaintiff responded that her fellow students' hostility toward her during the lab sessions was "rooted in [their] unwillingness to accept her cultural background and age." (Id. ¶ 96.) When Sodano replied that his decision was final, Plaintiff suggested alternatives that would allow her to receive credit for completion of the lab portion of CSEP 658. Sodano countered with two different alternatives: (1) accept a failing grade in the course, or (2) agree to resign from the lab, promise to abide by the American Counseling Associations Code of Ethics, and accept a grade of incomplete until she was able to fulfill an approved alternate experience in a closed group

program. The latter alternative was presented in writing and required Plaintiff's signature. Plaintiff advised Defendant Sodano, and Defendant Guyker and non-party Dr. Lee, who were also present, that she needed to study the agreement before signing it. When Sodano stated that she needed to sign the agreement then and there or incur a failing grade, she left the meeting.

Plaintiff attempted to attend the final lab session on March 28, 2012, but Defendant Guyker directed her to leave and escorted her from the room. Plaintiff then withdrew from all of her courses prior to SUNY Buffalo's March 30, 2012 withdrawal deadline. Plaintiff withdrew from CSEP 658, rather than receive a failing grade, because it would have placed her in breach of scholarship grant conditions, reduced her grade point average, and jeopardized her ability to timely fulfill her degree requirements. She withdrew from her remaining courses because she suffered emotional distress that impaired her ability to concentrate, she wished to reassess her participation in the program in the face of the treatment she was subjected to, and two of her remaining courses were taught by Guyker and Lee, both of whom had attended her meeting with Defendant Sodano.

Defendants prevented Plaintiff from continuing in the program in the Fall 2012 semester. The reason they gave was that Plaintiff was non-matriculated in the program and had exceeded the number of program course credits that could be taken by a non-matriculated student.

Based on these fact allegations, Plaintiff asserts claims for national origin discrimination in violation of Title VI, discrimination and retaliation in violation of 42 U.S.C. § 1981, deprivation of due process, retaliation for Plaintiff's exercising her First

Amendment rights, national origin discrimination in violation of the New York Human Rights Law ("HRL"), and age discrimination in violation of the HRL.

## DISCUSSION

### A.    Standard of Review

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the

7

misconduct charged. Iqbal, 446 U.S. at 129 S.Ct. at 678. The plausibility standard is not, however, a probability requirement: the pleading must allege more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1950; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B.    Analysis**

1.   Title VI Race Discrimination

The first claim, brought under Title VI of the Civil Rights Act, is asserted against Defendants SUNY Buffalo and State of New York. Title VI prohibits "any program or activity receiving Federal financial assistance" from excluding or otherwise discriminating against any individual on the basis of race, color, or national origin. 42 U.S.C. § 2000d. To state a claim of discrimination under Title VI, the plaintiff must plausibly allege, inter alia, that the defendant engaged in discrimination based on race, the discrimination was intentional, and the defendant's discriminatory intent was a substantial or motivating factor for its actions. Roggenbach v. Touro College of Osteopathic Med., 7 F. Supp. 3d 338, 347 (S.D.N.Y. 2014) (citing Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001)).

Defendants maintain that, despite its overall length, the Complaint does not allege sufficient facts to state a plausible claim for discrimination based on race or national origin. They note the various reasons Plaintiff gives for her classmates' alleged hostility toward her—she lectured them, told them she was judging them, and committed what they viewed as an ethical breach. These and Plaintiff's other allegations, Defendants say, do not give rise to a plausible inference of animus based on Plaintiff's Mexican ancestry.

8

Plaintiff acknowledges that certain allegations regarding her own conduct arguably support a conclusion that Defendants had nondiscriminatory reasons for prohibiting her from attending the remaining CSEP 658 lab sessions. But, she urges, her Complaint goes far beyond what is required to state a claim under <u>Twombly</u> and <u>Iqbal</u>. Plaintiff argues that her additional, detailed fact allegations call into question the validity of each of the potential nondiscriminatory reasons, and thereby raise the possibility that discrimination was a motive in Defendants' decision to prohibit her from completing the lab.

The portions of the Complaint to which Plaintiff refers allege that: (1) she was the only individual in her group who was Hispanic and did not speak English as her first language; (2) at some point, she came to learn from a friend that some of the words and statements that had upset her fellow students carried a definition or implication that she was unaware of and did not intend; (3) she informed Sodano, Guyker and Lee that her fellow students had misunderstood her statements due to their own unwillingness to accept her cultural background; (4) her fellow students' understanding of her comments "was demonstrably false" and discriminatory; and (4) after she made these statements to Defendant Sodano, he nevertheless determined that he would not allow her to attend the final lab session. (Docket No. 1 ¶¶ 66-70, 73-75, 91, 96, 112-121.)

It is well established that a plaintiff's "naked allegation" of having been treated differently from individuals outside of the protected class is "too conclusory" to survive a motion to dismiss. <u>Kajoshaj v. N.Y.C. Dep't of Ed.</u>, 543 Fed. Appx. 11, 14 (2d Cir. 2013) (citing <u>Albert v. Carovano</u>, 851 F.2d 561, 572 (2d Cir. 1988)). So, too, is a bare allegation that persons outside the protected group were not willing to accept a plaintiff's differing

cultural background. The Complaint here simply does not state facts from which one could reasonably infer that Plaintiff's race or national origin played a role in SUNY Buffalo/State of New York's decision that she would not be allowed to attend the final two sessions of the CSEP 658 lab. In short, the allegations do not nudge Plaintiff's claim of Title VI discrimination over the line from possible to plausible, and Defendants' motion as to this claim will be granted.[2]

### 2. 42 U.S.C. § 1981

In her second claim for relief, Plaintiff alleges that Defendants Sodano and Guyker violated 42 U.S.C. § 1981, which proscribes racial discrimination concerning a person's right to "make and enforce contracts," which encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Turner v. Nazareth College, 2011 U.S. Dist. LEXIS 8324, at *9 (W.D.N.Y. Jan. 28, 2011) (quoting Milan v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (internal quotation marks omitted)).

---

2 Plaintiff correctly notes that certain of Defendants' pinpoint citations relate to the showing necessary for a hostile work/educational environment claim—i.e., a claim that she has not asserted here. That analysis is not applied to the Court's consideration of the sufficiency of the Complaint.

According to Plaintiff, who is Mexican, her enrollment in SUNY Buffalo's Rehabilitation Counseling Master's Degree program gave rise to a contractual relationship between herself and the university. New York State courts have recognized that an implied contract, such as is alleged here, may exist between a university and a student. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y. 1998)(listing cases expounding this theory of liability).

Defendants do not challenge the sufficiency of Plaintiff's pleading with regard to the existence of a contractual relationship. They do, however, urge that Plaintiff has not alleged facts from which intentional discrimination or retaliation by Defendants Sodano and Guyker can be inferred. See Carovano, 851 F.2d at 571 ("Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory.")

Plaintiff has not offered a response as to retaliation, and apparently concedes that she has not alleged facts supporting an inference of purposeful retaliatory conduct. This Court agrees that § 1981 retaliation cannot be reasonably inferred from the facts alleged in the Complaint.

Plaintiff also appears to concede that Defendants Sodano and Guyker did not purposefully discriminate against her. Rather, she refers to the "cat's paw" theory of liability. This theory, recognized in employment cases, provides that an employer may be liable for discrimination if "a supervisor performs an act motivated by [unlawful] animus that is intended by the supervisor to cause an adverse employment action, and . . . that act is a proximate cause of the ultimate employment action" (even if the actual

11

decisionmaker was not motivated by discrimination). <u>Staub v. Proctor Hosp.</u>, 562 U.S. 411, __,131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011).

Even assuming this theory is applicable outside the employment context, and that it is available in this Circuit for § 1981 claims, Plaintiff's allegations are not sufficient to support such a theory. Contrary to Plaintiff's characterization, Ph.D. student Crawford, who led the lab sessions, was not "a supervisor of sort." (Docket No. 10 at 11.) Furthermore, no discriminatory motive by Crawford can reasonably be inferred from Plaintiff's allegations, nor has Plaintiff alleged any discriminatory act by Crawford that proximately caused Defendants to prohibit her from attending the final lab sessions. Plaintiff's parenthetical and conclusory allegation that Crawford ("schemed to force the dismissal of Plaintiff from the class") lacks factual support. (Docket No. 1 ¶ 70.) Indeed, to the extent the Complaint addresses Crawford's conduct at all, it alleges that she "declined" to intervene when group members became upset over Plaintiff's comments, and "did nothing" to refocus the group. (<u>Id</u>. ¶¶ 70, 75.) Plaintiff's opposing memorandum similarly refers to Crawford as "insipid" and an "ineffective leader." (Docket No. 10 at 11.) Such allegations, accepted as true, do not give rise to a plausible inference of national origin or race-based discriminatory animus or conduct. Accordingly, the second cause of action is dismissed for failure to state a claim.

### 3. Procedural Due Process

Plaintiff's third cause of action alleges a denial of due process. To be entitled to the procedural protections of the Fourteenth Amendment, a plaintiff must show that the defendant's conduct deprived the plaintiff of either a "liberty interest" or "property

interest." Here, Plaintiff alleges that her implied contract with SUNY Buffalo gave rise to a property interest in her continuing enrollment.

The touchstones of due process are notice and an opportunity to be heard. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L.Ed. 865 (1950). In Board of Curators of University of Missouri v. Horowitz, the Supreme Court was asked to consider "what procedures must be accorded to a student at a state educational institution whose dismissal may constitute a deprivation of 'liberty' or 'property' within the meaning of the Fourteenth Amendment." 435 U.S. 78, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978). The Court distinguished between dismissals or suspensions for disciplinary reasons and those based on failures to meet academic or curriculum standards.

Referring to an earlier case involving a disciplinary suspension,[3] the Supreme Court confirmed that disciplinary actions have a sufficient resemblance to traditional judicial and administrative factfinding to call for a "hearing" before the relevant school body. Id. at 88-89. Even in that context, however, the Court declined to require a formal hearing. It concluded that, in the case of a disciplinary dismissal, a student must be given notice of the charges and, if he or she denies them, an explanation of the evidence and an opportunity to present his or her side of the story in an "informal give and take." Id. at 85-86.

The Court contrasted the factfinding involved in disciplinary matters with the subjective and evaluative nature of academic decisions, and concluded due process requirements must necessarily be less stringent in the academic context. Specifically,

3 Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975).

due process with regard to academic decisionmaking requires only that: (1) the student is made aware of the school's dissatisfaction with or expectations for progress, including the possible impact on continued enrollment, and (2) the ultimate decision to dismiss is careful and deliberate. There is no hearing requirement. <u>Id</u>. at 84-85.

Plaintiff alleges that, prior to enrolling in the Rehabilitation Counseling Masters Program, she had attained a grade point average over 3.7, she received a scholarship grant to pursue her Masters studies, and she received high grades in her first semester in the Masters Program. (Docket No. 1 ¶¶ 10, 15, 20.) During her second semester, however, Defendants came to characterize her as "conflictive," and Defendant Sodano stated she presented a small or moderate potential for harm to her CSEP 658 lab group. (<u>Id</u>. ¶¶ 76, 81.) When Plaintiff met with Defendant Sodano, he advised that she would not be permitted to complete the lab, and gave her the options of accepting a failing grade in the CSEP 658 course, or accepting a grade of incomplete. Plaintiff characterizes this as a de facto dismissal from the program as either option would have caused her to breach the conditions of her scholarship grant. Plaintiff ultimately withdrew from her second semester courses.

Defendants move to dismiss this claim on the grounds that Plaintiff's voluntary withdrawal from her courses makes this an academic dismissal, and Defendants met the less rigorous requirements applicable to such a dismissal.

Plaintiff vigorously disputes this point, and the Court agrees that Defendants have not provided any persuasive basis for dismissal. First, Plaintiff has pleaded specific facts that plausibly suggest the decision to prohibit her from completing the lab was based, not

14

on questionable academic performance, but on the perception that Plaintiff was a "conflictive" individual whose comments upset others in the group. In short, the allegations at least equally suggest that the decision was disciplinary in nature. Additionally, even assuming the dismissal was for academic reasons, Defendants do not cite to any allegations that support their conclusory assertion that Defendants: (1) advised Plaintiff of their dissatisfaction with her academic progress, and (2) made a careful and deliberate decision regarding her future enrollment. Accordingly, Defendants' motion to dismiss the due process claim will be denied.

### 4. Retaliation for Exercising First Amendment Rights

In Plaintiff's fourth cause of action, she alleges that Defendants Janikowski, Burganowski, Sodano, and Guyker chilled her ability to express her opinions when they accepted without question the "opprobrium" of her classmates. As noted previously, Plaintiff alleges, inter alia, that her classmates became upset with her because of the opinions she expressed during group discussions, their belief that she was "lecturing" them, and her statement that she was "judging" them. Plaintiff further alleges that her response to a hypothetical question presented during a lab session contributed to her "classmates forming a collective and hysterical dislike toward her." (Docket No. 1 ¶¶ 149-50.) Defendants thereafter "chilled Plaintiff in her ability to express her opinions" by prohibiting her from completing her lab sessions. (Id. ¶151.)

To survive a motion to dismiss, a Complaint asserting a First Amendment retaliation claim must include nonconclusory allegations showing that: (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the

15

plaintiff, and (3) there was a causal connection between the protected speech and the adverse action. Garcia v. S.U.N.Y. Health Scis. Ctr of Brooklyn, 280 F.3d 98, 106-10 (2d Cir. 2001).

Defendants have moved for dismissal of this claim on the ground that "simply answering a question to a small group lab in an educational setting does not afford itself to protected speech"—in short, that the facts alleged cannot satisfy the first element of a First Amendment retaliation claim. (Docket No. 6-1 at 14.) Though not entirely clear, Defendants appear to suggest that utterances made in a small class session do not constitute protected speech as a matter of law. They do not provide any analysis or citation in support of this pronouncement, nor do they discuss the parameters of protected speech in a university environment at all. This defect alone would be a basis upon which to deny Defendants' motion. Nevertheless, the Court will consider Plaintiff's allegations under the applicable plausibility standard.

The Supreme Court repeatedly has confirmed that its precedents "leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'" Healy v. James, 408 U.S. 169, 18092 S. Ct. 2338, 33 L. Ed. 2d 266 (1972) (citation omitted). In Tinker v. DesMoines Indep. Cmty. Sch. Dist., the Supreme Court observed that "[a]ny word spoken, in class, in the lunchroom, or on the campus that deviates from the views of another person may start an argument or cause a disturbance." 393 U.S. 503, 508, 89 S. Ct. 733, 21 L. Ed. 2d 731

(1969). But, to justify actions taken with regard to a particular expression of opinion, a defendant school must be able to show that the action was "caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." Id. at 509.

Here, Plaintiff alleged her fellow students became upset with her views on various lab topics, and that shortly thereafter, Defendants prohibited her from completing the lab component of her course. These allegations are sufficient to state a plausible claim of First Amendment retaliation.

Defendants go on to urge that Defendants are entitled to qualified immunity because the First Amendment's applicability to speech on college campuses is not a clearly established right of which a reasonable person should have known. The plethora of Supreme Court authority on this issue says otherwise. Accordingly, Defendants motion to dismiss this claim is denied.

5.  National Origin/Race Discrimination under the NYSHRL

Defendants next argue that Plaintiff fails to state a claim for national origin and/or race discrimination under state law for the same reasons the claim is insufficient under federal law.

It is well established that New York courts look to federal case law in analyzing discrimination claims brought under the HRL. Miller Brewing Co. v. St. Div. of Human Rights, 66 N.Y.2d 937 (1985) (claims brought under HRL analyzed under the same standard as those brought under the Civil Rights Act); see Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000) (applying same analysis to race discrimination claims

17

brought under federal and New York statutes); <u>Patterson v. Xerox Corp.</u>, 732 F. Supp. 2d 181, 190 n.3 (W.D.N.Y. 2010) (applying same analysis to national origin, race and gender claims brought under state and federal antidiscrimination laws). Accordingly, Plaintiff's state law race and/or national origin claim will be dismissed for the same reasons as her Title VI claim.

      6.  <u>Age Discrimination under the NYSHRL</u>

In her final claim for relief, Plaintiff alleges that she was 50 years of age when she was prevented from completing the CSEP 658 lab component, and that her age was a motivating factor in the actions taken by Defendants SUNY Buffalo and State of New York. The allegations on which this claim is based are essentially the same facts pled with regard to her other discrimination and retaliation claims—i.e., Plaintiff's fellow students were critical of her and became upset with her for no good reason, and the only possible explanations are: they did not like what she said, they ostracized her because she was Mexican, and they ostracized her because she was older than they. As noted previously, a "naked allegation" that the plaintiff was treated differently by virtue of falling within a protected class is "too conclusory" to survive a motion to dismiss. <u>Kajoshaj</u>, 543 Fed. Appx. At 14 (2d Cir. 2013). This cause of action, too, is properly dismissed for failing to allege facts that nudge the claim over the line from possible to plausible.

**CONCLUSION**

For the reasons stated, Defendant's motion to dismiss is granted in part and denied in part. The discrimination and retaliation claims brought under Title VI, 42 U.S.C. § 1981, and the HRL are dismissed. The case will proceed as to the third cause of action

alleging a deprivation of due process, and the fourth cause of action alleging First Amendment retaliation.

**ORDER**

IT HEREBY IS ORDERED that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated:   December 27, 2014
            Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court