UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARIA PEREZ de LEON-GARRITT,

                            Plaintiff,

       v.                                                **DECISION AND ORDER**
                                                                  14-CV-456S

STATE UNIVERSITY OF NEW YORK AT BUFFALO,
STATE OF NEW YORK, DAVID F. BURGANOWSKI,
Director, Rehabilitation Counseling Program,
TIMOTHY P. JANIKOWSKI, Associate Professor
and Department Chair, SANDRO M. SODANO,
Assistant Professor, and WENDY GUYKER,
Associate Professor,

                            Defendants.

## INTRODUCTION

Plaintiff Maria M. Perez de Leon-Garritt commenced this lawsuit by filing a Summons and Complaint in the State of New York, Supreme Court, County of Erie, against Defendants State University of New York at Buffalo, the State of New York, David F. Burganowski, Timothy P. Janikowski, Sandro M. Sodano, and Wendy M. Guyker. Defendants removed the action to this Court on June 13, 2014, and moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 6.) On December 29, 2014, this Court granted that motion in part and denied it in part, allowing two causes of action to move forward: deprivation of due process and First Amendment retaliation. Perez de Leon-Garritt v. State Univ. of New York at Buffalo, No. 14-CV-456S, 2014 WL 7384221, at *9 (W.D.N.Y. Dec. 29, 2014). Defendants now move for summary judgment dismissing the remaining causes of action; Plaintiff moves *pro se*

1

for partial summary judgment on the due process claim. For the reasons discussed below, Defendants' motion is granted and Plaintiff's motion is denied.

**BACKGROUND[1]**

Plaintiff is a former student at Defendant State University of New York at Buffalo; the individual Defendants are professors associated with the Rehabilitation Counseling Master's Degree Program. Plaintiff was enrolled in the Rehabilitation Counseling Master's Degree Program in the fall of 2011, and successfully completed her first semester academic requirements. She then enrolled for a full-time course load for the second semester—i.e. Spring 2012—the period during which the events giving rise to her claims occurred.

One of the courses for which Plaintiff registered was a required course, CSEP 658, entitled "Introduction to Group Work." This course had two components—a lecture and a "lab" section. The lab consisted of six group counseling sessions in which small groups of students participated. Plaintiff's lab group was comprised of approximately eight students, including herself, and was led by a Ph.D. student, Brandy Crawford, who was supervised by Dr. Guyker. Plaintiff's lecture section was taught by Dr. Ventura, and the entire CSEP 658 course was overseen by Dr. Sodano.

During the relevant period, Plaintiff was 50 years old and employed full-time as a Rehabilitation Specialist. She was born in Mexico and Spanish is her native language. The other members of her lab group, including the group leader, were significantly

---

[1] For the sake of brevity and clarity, this Court will recite only those facts pertinent to the pending motion. The facts are drawn from the parties' Rule 56 Statements of Facts and the attached exhibits, and are undisputed unless otherwise noted.

younger, primarily non-Hispanic Caucasians, and appeared to be native English speakers. During the lab sessions, there were several interactions where Plaintiff alleges that she was verbally attacked by her classmates, and she attributes the conflicts to these differences. Plaintiff alleged in her Complaint that one such attack arose when a classmate told Plaintiff: "When you are quiet I feel you are judging me," and Plaintiff replied "Of course I am judging you. I want to learn." (Docket No. 1 at ¶ 66.) Plaintiff stated that she was unaware that the word "judging" had negative connotations because English is her second language and, when translated to Spanish, "judging" does not mean "judgmental" but has a much more positive connotation. Defendants dispute Plaintiff's claim that she was not aware of the negative connotations of the term.

Another incident followed a comment that Plaintiff made during the separate lecture section, in which she stated: "I don't care if I break confidentiality and if I'm kicked out of [the lab] group." (Docket No. 44-4 at 46.) Plaintiff contends that this was said in a "silly tone" and meant as a joke, and that she never intended to actually break the confidentiality of her lab group.[2] However, the comment upset one of Plaintiff's lab-group classmates, who reported it to Crawford. On March 7, 2012, during the next lab session, the classmate confronted Plaintiff, accusing her of having breached the confidentiality of the group. Plaintiff alleges that this confrontation left her in tears.

After this interaction, Plaintiff wrote in her class journal (to which Crawford had access), "I think the whole group session is a complete mess," "[t]his group is poisonous to me," and "I feel very, very hurt, disappointed and UNSAFE." (Docket No. 44-4 at 111-

---

[2] Based on the record, it appears that the lecture section professor did not believe that Plaintiff's comments in lecture actually broke confidentiality at the time, though this issue is in dispute.

12.) She described the group as "psychologically hazardous." (Id.) She also emailed Dr. Ventura on March 8, 2012 to inform him that "[t]he dynamics in group lab is triggering traumatic symptoms in me to the point they are distressing and disruptive in my daily functioning." (Docket No. 44-20 at 22.) She noted that she would "carefully evaluate the impact of the group lab in my mental health." (Id.)

Based on Plaintiff's statements that she was not sure she could safely complete the lab group, Drs. Lee and Sodano discussed the possibility that she might complete her lab requirement by other means, such as a therapy group outside the university, and Dr. Lee discussed this possibility with Plaintiff. At that time, the Defendants seemed optimistic that Plaintiff could complete the program. For example, on March 13, 2012, Dr. Sodano emailed Dr. Lee to say that "[a]n outside group is possible and even waiting until next year to start another group in our program is possible too. There is still a lot to be done." (Id. at 13.) Dr. Sodano also noted that he and the other professors had an obligation to the group and Plaintiff to ensure that there were no further negative effects on the lab section participants.

On March 18, 2012, Crawford emailed Plaintiff attempting to schedule a time to meet before the next lab session, which was scheduled to take place on March 21, 2012. Plaintiff responded that her schedule was busy and ultimately declined to meet prior to the session. That same day, Plaintiff emailed Drs. Sodano and Burganowski informing them that:

> Friday, I had an appointment with my psychiatrist. He is worried about my mental stability as he told me this seems like a PTSD reaction. He told me there are ways to handle PTSD but it is not a practice group. He wants to talk to me again on Tuesday night (before group). His recommendation is

>that I do not attend group. . . . If my psychiatrist determines it is dangerous
>for my mental health, I will not go against his professional opinion.

(Docket No. 44-4 at 113.) Dr. Sodano responded to this email by strongly suggesting that Plaintiff should complete her lab requirement outside of her lab group. Although Crawford continued to try and arrange a meeting with Plaintiff before the March 21 session, Plaintiff stated that a meeting would be impossible, due to her work schedule and other obligations.

On March 20, 2012, Dr. Sodano wrote to Plaintiff again, telling her that she could not continue in the lab group, "based on the difficulty" she was experiencing and her "distress . . . in connection to [her] experience in the group." (Id. at 115.) Dr. Sodano concluded that: "It would be irresponsible for me to allow you to continue any further," but offered his commitment to work with Plaintiff "to find a solution to fulfilling [the course] requirement outside of the current group." (Id.) Plaintiff states that, after she received this email, she attempted to seek an outside group that would fulfill her course obligations and found that she was ineligible. She also spoke to her therapist, who cleared her to attend the lab group sessions.

Plaintiff hoped that Dr. Sodano would reconsider allowing her to continue in the lab group, and met with him, Dr. Guyker, and Dr. Lee on March 23, 2012. Dr. Sodano had prepared an agreement for Plaintiff to sign that stated Plaintiff would be allowed to complete the lecture portion of CSEP 658, but would be required to complete the lab component in an outside group, and provided that "Dr. Sodano will assist Maria in identifying an appropriate outside group experience." (Docket No. 44-8 at 35.) Plaintiff refused to sign the agreement.

5

On March 28, 2012, Plaintiff attempted to attend the lab group session despite Dr. Sodano's instructions not to do so. Dr. Guyker appeared and instructed Plaintiff to gather her belongings and leave the classroom. Plaintiff then met with Dr. Sodano and Dr. Guyker in Dr. Guyker's office, with Dr. Lee participating by phone. The three confirmed that Plaintiff would not be allowed to continue in her lab group section.

On March 30, 2012, Plaintiff resigned from all her courses. She states that she did this because she was emotionally upset and humiliated by her removal, and because she felt that the instructors were against her. Plaintiff did not contact any of her instructors before resigning, nor did she make any form of grievance or complaint. On April 4, 2012, Dr. Burganowski sent Plaintiff an email stating that he was surprised that she had resigned from her courses and that it appeared she had withdrawn from the Rehabilitation Counseling Program. He requested that she confirm by May 11, 2012. Because Plaintiff did not respond to the email, Dr. Burganowski sent her a certified letter on May 31, 2012 informing her that she had been terminated from the program. Plaintiff commenced the present suit on May 7, 2014.

## DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. at 545 (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 248). Where, as here, both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001).

Plaintiff's two remaining causes of action, brought under 42 U.S.C. § 1983, allege a due process violation under the Fourteenth Amendment and retaliation in violation of the First Amendment. "In order to state a claim under Section 1983, 'a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.'" Attallah v. New York Coll. of Osteopathic Medicine, 94 F. Supp. 3d 448, 454 (E.D.N.Y. 2015) (quoting Dwyer v. Regan, 777 F.2d 825, 828 (2d Cir. 1985)). Defendants argue that Plaintiff has failed to raise triable issues of fact on either count, and that the case should be dismissed. Plaintiff argues that she has proven a due process violation because the Defendants did not give her notice of the charges against her or allow her an opportunity to defend against them.

**A.      Procedural Due Process**

The Due Process Clause of the Fourteenth Amendment requires that, generally, a

person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. Bd. of Regents v. Roth, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Thus, in order to sustain an action for deprivation of property without due process of law, a plaintiff must identify a property right and show that a state actor has deprived plaintiff of that right without due process. To determine what process is due, the Court must consider: 1) the private interest that will be affected; 2) the risk of erroneous deprivation through the procedures, and the probable value of additional or alternative safeguards; and 3) the government's interest, including the function involved and the administrative burdens of the additional safeguards. Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).

Plaintiff alleges that the Defendants' decision to exclude her from the lab section in which she was enrolled was made without due process. Assuming *arguendo* that Plaintiff had a property interest in remaining in her lab section, she must still demonstrate that that the exclusion was made without due process of law. Defendants contend that, as in other cases involving constructive discharge or expulsion from a school program, Plaintiff had an adequate post-deprivation remedy via a proceeding under Article 78[3] and failed to take advantage of that remedy. "It is well-settled that 'an Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit.'" Attallah, 94 F. Supp. 3d at 455-56 (quoting Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877,

---

[3] N.Y. Civ. Prac. L. & R. § 7801 *et seq.*

881 (2d Cir.1996)). "Generally speaking, the availability of an Article 78 proceeding bars seeking relief under Section 1983 when there is an adequate state post-deprivation procedure to remedy a random or arbitrary deprivation of property or liberty." Id.

In Attallah, the District Court dismissed a similar action in which the plaintiff argued that he was expelled from medical school without due process. 94 F. Supp. 3d at 455-58. In dismissing the claim, the court found that an Article 78 proceeding in New York State Court "'is a perfectly adequate postdeprivation remedy'" under these circumstances, id. at 457 (quoting Grillo v. New York City Transit Auth., 291 F. 3d 231, 234 (2d Cir. 2002)), and cited cases from several other district courts in the Second Circuit that have held similarly. Id. (citing Cohn v. New Paltz Sch. Dist., 363 F. Supp. 2d 421, 433-34 (N.D.N.Y. 2005) ("The Article 78 proceeding constituted part of the due process protection [plaintiff] received, and it cured any procedural defect that may have occurred."); S.C. v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-1672 CS, 2012 WL 2940020, at *10 (S.D.N.Y. July 18, 2012) (an Article 78 proceeding is "itself a sufficient post-deprivation remedy" precluding a procedural due process claim for review of decisions by school administrators); DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 491 (E.D.N.Y. 2009) (granting summary judgment on due process claim based on long-term suspensions because plaintiffs received initial hearing and "plaintiffs also could have resorted to an Article 78 proceeding"); Schwartz v. Schuker, 298 F. Supp. 238, 241 (E.D.N.Y. 1969) (an appeal through Section 310 of the New York Education Law also provides adequate post-deprivation due process for a suspended student to preclude a

9

Section 1983 claim)).[4]

Plaintiff argues that Attallah is not applicable here, because her exclusion from the lab section was not a random and unauthorized act. "In certain situations where the alleged violations are systemic, and not isolated and random, the availability of an Article 78 proceeding does not bar a procedural due process claim." Horton, 2017 WL 1437186, at *5 (citing Reyes v. County of Suffolk, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014)); see also Hellenic Am. Neighborhood Action Comm., 101 F.3d at 880. But nothing in Plaintiff's complaint, nor in the facts she offers on summary judgment, suggests that there is a systemic exclusion of students from lab sections, or that she was systemically excluded from her other classes. Instead, Plaintiff contends that Dr. Sodano undertook a "secret investigation" and acted without authority in excluding her from the lab section. Such an alleged abuse of process falls within the category of "random and unauthorized" acts that Article 78 is designed to remedy. See, e.g., Chaffer v. Bd. of Educ. of City Sch. Dist. of City of Long Beach, 229 F. Supp. 2d 185, 189 (E.D.N.Y. 2002) (dismissing Section 1983 claim for abuse of process during school board disciplinary hearing, holding that "[t]o the extent that [plaintiff] is arguing that the Board failed to follow appropriate . . . procedures in terminating him, his claim necessarily fails

---

[4] Attallah was affirmed by the Second Circuit, 643 F. App'x 7 (2d Cir. 2016), and has been cited with approval by other district courts. See, e.g., Storey v. Morris, No. 716CV206LEKATB, 2017 WL 933212, at *4 (N.D.N.Y. Feb. 1, 2017), report and recommendation adopted, No. 716CV206LEKATB, 2017 WL 916418 (N.D.N.Y. Mar. 8, 2017) ("As in Attallah, . . . the availability of [an Article 78 post-deprivation remedy] precludes plaintiff in this case from stating a plausible due process claim in this action, and plaintiff's due process claim may be dismissed."); Horton v. Bd. of Educ. of Sherburne-Earlville Cent. Sch. Dist., No. 5:17-CV-45 (MAD/ATB), 2017 WL 1437186, at *5 (N.D.N.Y. Apr. 21, 2017) ("Where, as here, Article 78 gave Plaintiff a meaningful opportunity to challenge his academic suspension, he was not deprived of due process simply because he failed to avail himself of the opportunity."); JF v. Carmel Cent. Sch. Dist., 168 F. Supp. 3d 609, 620 (S.D.N.Y. 2016) ("Plaintiffs could have, and should have, availed themselves of the Article 78 hearing process. Its availability is therefore fatal to their procedural due process claim.").

because of the availability of Article 78 review.") aff'd, 75 Fed. App'x 12 (2d Cir. 2003). Accordingly, this Court finds that summary judgment is appropriate because the post-deprivation remedies that were available to Plaintiff would have afforded her all the process that was due.[5] Defendant's motion is granted, Plaintiff's cross-motion is denied, and the due process claim is dismissed.

**B.     Retaliation for Exercising First Amendment Rights**

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011) (citing Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003)). "As a general rule, student speech in school is protected under the First Amendment unless it would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.'" Id. (quoting Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 509, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969)) (internal quotation marks in Tinker omitted).

Plaintiff alleges that the Defendants violated her First Amendment rights and chilled her ability to express her opinions by excluding her from the lab section, and that this adversely affected her by causing her to be unable to complete the courses required for her degree. She contends that the protected speech is composed of statements she made during the March 7, 2012 lab session, as well as complaints she made regarding

---

[5] Having found that a post-deprivation remedy was available, this Court does not address the remainder of Defendants' arguments.

that session in her class journal and emails. During her deposition, she described her understanding of the protected statements as follows:

> Q. What was your protected speech?
>
> A. My protected speech was everything what I said I wrote, I expressed, it was my opinion, my personal opinion. It was quoting from textbooks, academic textbooks.
>
> * * *
>
> Q. What opinion were they trying to silence?
>
> A. I don't know which one specific but I'm sure -- they silenced all of them by removing me.
>
> Q. What specific speech were they trying to prevent you from engaging in?
>
> A. I think that would be a question that it has to be answered by the defendants because I don't know specific speech that they were preventing me from expressing. I assumed --well, at that time and now that it was that I am judging you. To be honest counselor, still it doesn't make much sense.

(Docket No. 44-4 at 83-84.) Defendants argue that Plaintiff has failed to sufficiently identify any particular statement or opinion, which renders it impossible to determine whether Plaintiff's speech was protected or whether it motivated Defendants' actions.

> As this Court noted in its prior decision and order:
>
> The Supreme Court repeatedly has confirmed that its precedents "leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Healy v. James, 408 U.S. 169, 180, 92 S. Ct. 2338, 33 L. Ed. 2d 266 (1972) (citation omitted).

Perez de Leon-Garritt, 2014 WL 7384221, at *9. However, it is impossible for this Court to conclude that Plaintiff's constitutional freedoms were violated because it is unclear what speech she is alleging merits First Amendment protection. See Mpala v. Gateway

Cmty. Coll., No. 3:13-CV-01114 VLB, 2014 WL 2048584, at *5 (D. Conn. May 19, 2014) (dismissing First Amendment claim where "it [was] unclear what speech the Plaintiff allege[d] to be protected"); Scaccia v. Stamp, 700 F. Supp. 2d 219, 241 (N.D.N.Y. 2010) (dismissing First Amendment claim where "in spite of the vast record and plaintiff's one hundred and twenty-eight paragraph declaration, he does not at any point state the exact nature of the public statements he allegedly made that are at the heart of his protected speech claim").

Further, "[s]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Defendants contend that Plaintiff was excluded from the program for her own wellbeing after she stated that she was experiencing extreme stress, and because she threatened to breach confidentiality. Plaintiff has not identified any protected speech that might have given rise to motives other than these, instead arguing that all her speech is protected and that, while she does not know the reasons or motivations behind her exclusion, an improper motive can be inferred. "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the [summary judgment] motion." Harlen Associates v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing Western World Ins. Co. v. Stack Oil, 922 F.2d 118, 121 (2d Cir.1990); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (holding that nonmoving party must do more than merely show "some metaphysical doubt" as to material facts to escape summary judgment)).

Plaintiff does not identify any specific opinion, complaint, or statement as protected speech. Nor does she identify how any opinion, complaint, or statement led to the Defendants' decision to exclude her from the lab section. Plaintiff's contention that she was excluded due to general opinions and complaints precludes the specific identification of an improper motive. Accordingly, Defendants' motion is granted and the First Amendment claim is dismissed.

## CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact sufficient to merit this case moving to trial. Accordingly, Defendants' motion for summary judgment is granted, Plaintiff's motion is denied, and the case is dismissed.

## ORDER

IT HEREBY IS ORDERED that Defendants' Motion for Summary Judgment (Docket No. 44) is GRANTED;

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 46) is DENIED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: March 27, 2018
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Court